UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
NANCY ANNE RAEBURN TSAI,

                                  Case No. CV 05 7761

                        Plaintiff,

    -against-

JOHN SILBERMAN ASSOCIATES, P.C.,             (Buchwald, J.)
and MARTHA GRAY BILLMAN,

                          Defendants.
-----------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT


                              Respectfully Submitted,

                              L'ABBATE, BALKAN, COLAVITA
                                & CONTINI, L.L.P.
                              Attorneys for Defendants
                              1001 Franklin Avenue
                              Garden City, New York 11530
                              (516) 294-8844
                              File No: 05 566 91360


PETER D. RIGELHAUPT, ESQ.
Of Counsel

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT……………………………………….…..   1

STATEMENT OF FACTS………………………………………….…..   5

POINT I……………………………………………………………..…...   6

      THE PLAINTIFF CANNOT ESTABLISH THOSE
      ELEMENTS NECESSARY TO SUSTAIN HER CLAIM
      SOUNDING IN LEGAL MALPRACTICE

POINT II……………………………………………………………..…..   11

      THE PLAINTIFF IS UNABLE TO SUSTAIN HER
      SECOND CAUSE OF ACTION SOUNDING IN BREACH
      OF FIDUCIARY DUTY

POINT III……………………………………………………………….   15

      THE PLAINTIFF IS UNABLE TO SATISFY THE
      ELEMENTS OF HER THIRD CAUSE OF ACTION FOR
      INTERFERENCE WITH PROSPECTIVE ADVANTAGE

POINT IV…………………………………………………………….….   19

      THE PLAINTIFF'S CLAIN FOR PUNITIVE DAMAGES
      SHOULD BE DISMISSED

CONCLUSION……………………………………………………….…..   20

**TABLE OF AUTHORITIES**

**Page**

**Cases:**

AmBase v. Davis, Polk & Wardell, 30 A.D.3d 171, 816 N.Y.S.2d 438.......
(1st Dept. 2006)                                                                    12

American Federal Group, Ltd. v. Rothenberg, 136 F. 3d 897
(2d Cir. 1998)...........................................................................   12

Beattie v. Brown & Wood, 243 A.D.2d 295, 663 N.Y.S.2d 199
(1st Dept. 1997)........................................................................   10

Best v. Queller & Fisher, 278 A.D.2d 441, 718 N.Y.S.2d 397
(2d Dept. 2000), cert. den. 122 S. Ct. 812 (2002)...............................   16

BNY Capital Markets, Inc. v. Moltech Corporation, 2001 WL 262675
(S.D.N.Y. 2001)........................................................................   12-13

Borthmer v. Schooler, Weinstein, Minsky & Lester, 266 A.D.2d 154,
698 N.Y.S.2d 486 (1st Dept. 1999)..............................................   20

Brainard v. Brown, 91 A.D.2d 287, 458 N.Y.S.2d 735 (3d Dept. 1983)......   11

Brooks v. Lewin, 21 A.D.3d 731, 800 N.Y.S.2d 695 (1st Dept. 2005)........   6

Brown v. Samalin & Bock, P.C., 155 A.D.2d 407, 547 N.Y.S.2d 80
(2d Dept. 1989)........................................................................   11

Carvel Corporation v. Noonan, 3 N.Y.3d 182, 785 N.Y.S.2d 359 (2004)....   16

Columbus Trust Co. v. Campolo, 110 A.D.2d 616, 487 N.Y.S.2d 105
(2d Dept. 1984), aff'd 66 N.Y.2d 701, 496 N.Y.S.2d 425 (1985).............   10

Daniels v. Lebit, 299 A.D.2d 310, 749 N.Y.S.2d 149 (2d Dept. 2002)........   16

Ebker v. Tan Jay International LTD., et al., 741 F.Supp. 448
(S.D.N.Y. 1990)........................................................................   20

Fonar Corp. v. Magnetic Resonance Plus, Inc., 957 F.Supp. 477
(S.D.N.Y. 1997)........................................................................   18

Flutie Bros. LLC v. Hayes, 2006 WL 1379594 (S.D.N.Y. 2006)..............     13

Freda v. McNamara, 254 A.D.2d 251, 678 N.Y.S.2d 135 (2d Dept. 1998)..     10

Gazzola Building Corp. v. Shapiro, 181 A.D.2d 718, 580 N.Y.S.2d 477
(2d Dept. 1992).....................................................................     6

Giblin v. Murphy, 73 N.Y.2d 769, 772, 536 N.Y.S.2d 54 (1988).............     19

Gill v. Montgomery Ward & Co., 284 A.D. 36, 129 N.Y.S.2d 288
(3d Dept. 1954)....................................................................     19

Green v. Leibowitz, 118 A.D.2d 756 500 N.Y.S.2d 146 (2d Dept. 1986).....     19

Guard-Life Corporation v. S. Parker Hardware Manufacturing Corp.,
50 N.Y.2d 183, 428 N.Y.S.2d 628 (1980)........................................     17

Guardian Mortgage Acceptance Corporation v. Bankers Trust,
259 A.D.2d 358, 687 N.Y.S.2d 56 (1st Dept. 1999)............................     19

Gupta v. Rubin, 2001 WL 59237 (S.D.N.Y. 2001)..........................     13

Henneberry v. Sumitomo Corporation of America, 2005 WL 991772
(S.D.N.Y. 2005).....................................................................     16

Harrell v. Champlain Enters., 222 A.D.2d 876 ,634 N.Y.S.2d 880
(3d Dept. 1995).....................................................................     19

Keeley v. Tracey, 301 A.D.2d 501, 753 N.Y.S.2d 141 (2d Dept. 2003)......     6

Koppel v. 4987 Corp., 2001 WL  47000 (S.D.N.Y. 2001)......................     13

Le Mistral, Inc. v. Columbia Broadcasting System, 61 A.D.2d 491,
402 N.Y.S. 2d 815 (1st Dept. 1978)..............................................     19

LNC Investments, Inc. v. First Fidelity Bank, 2000 WL 375236
(S.D.N.Y. 2000).....................................................................     12

Luniewski v. Zeitlin, 188 A.D.2d 642, 591 N.Y.S.2d 524 (2d Dept. 1992).....     6

Mandelblatt v. Devon Stores, Inc., 132 A.D.2d 162, 521 N.Y.S.2d 672
(1st Dept. 1987)....................................................................     18

Mecca v. Shang, 258 A.D.2d 569, 685 N.Y.S.2d 458 (2d Dept. 1999)........   12

Mills v. Pappas, 174 A.D.2d 780, 570 N.Y.S.2d 726 (3d Dept. 1991).........   11

NBT Bancorp Inc. et al. v Fleet/Norstar Financial Group, Inc.,
87 N.Y.2d 614, 641 N.Y.S.2d 581 (1996)......................................   17

New York University v. Continental Ins. Co., 87 N.Y.2d 308,
639 N.Y.S.2d 283 (1995)......................................................   19

Norstar Bank of Upstate New York v. Office Control Systems,
165 A.D.2d 265 (3d Dept. 1991)...............................................   10

Phillips-Smith Specialty Retail Group v. Parker, Chapin, et al,
265 A.D.2d 208, 696 N.Y.S.2d 150 (1st Dept. 1999)...........................   9

Piccoli A/S v. Calvin Klein Jeanswear Co., 19 F. Supp. 2d 157
(S.D.N.Y. 1998)..............................................................   18

Pimpinello v. Swift & Co., Inc., 253 N.Y. 159, 170 N.E. 530 (1930).........   10

Sindelar v. Hawley, 290 A.D.2d 661, 736 N.Y.S.2d 175 (3d Dept. 2002)....   10

Sloane v. Reich, 1994 WL 88008 (S.D.N.Y. 1994).............................   6

Sofio v. Hughes, 162 A.D.2d 518, 556 N.Y.S.2d 717 (2d Dept. 1990)........   10

Spinosa v. Weinstein, 168 A.D.2d 32, 42-43, 571 N.Y.S.2d 747
(2d Dept. 1991)..............................................................   19

Swift v. Choe, 242 A.D.2d 188, 192, 674 N.Y.S.2d 17 (1st Dept. 1998)......   11

Union National Bank v. Schrum, 87 A.D.2d 682, 448 N.Y.S.2d 813
(3d Dept. 1982)..............................................................   10

Walker v. Sheldon, 10 N.Y.2d 401, 223 N.Y.S.2d 488 (1961).................   19

Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.,
10 A.D.3d 267, 780 N.Y.S.2d 593 (1st Dept. 2004)...........................   12

Weintraub v. Phillips, Nizer, Benjamin, Krim & Ballon, 172 A.D.2d 254,
568 N.Y.S.2d 84 (1st Dept. 1991)............................................   11

William Kaufman Organization, Ltd. v. Graham & James, LLP,
269 A.D.2d 171, 703 N.Y.S.2d 439 (1st Dept. 2000)............................   12

Zarin v. Reid & Priest, 184 A.D.2d 385, 585 N.Y.S.2d 379
(1st Dept. 1992)............................................................................   19

Zeigan v. Blue Cross and Blue Shield of Greater New York,
607 F. Supp. 1434 (S.D.N.Y. 1985)................................................   18


**Statutes:**

New York Estates, Powers and Trusts Law § 5-1.4............................   9

New York State General Obligations Law ["GBL"] § 5-701(3)...............   7


**Treatises:**

Simon's New York Code of Professional Responsibility Annotated,
2005 Ed. (West 2005)....................................................................   12

v

**PRELIMINARY STATEMENT**

Defendants, John Silberman Associates, P.C. and Martha Gray Billman, by their attorneys, L'Abbate, Balkan, Colavita & Contini, LLP, submit this memorandum of law in support of the motion for summary judgment seeking dismissal of plaintiff's complaint pursuant to Fed. R. Civ. P. Rule 56(b).

By way of background, the plaintiff and Mr. Tsai were married on April 19, 1997. At the time, the plaintiff was a citizen of Canada and a partner in an interior design firm she helped form by the name of Rollins Raeburn Interiors, where she was the creative designer. She received an environmental design degree from the Ontario College of Art & Design, and did post-graduate work with Sotheby's in London and Italy [Ex. C, p. 17-19]. There can be no disputing the fact that the plaintiff is a highly educated and successful businesswoman.

The plaintiff's second husband passed away in February, 1996, and as a consequence of his passing the plaintiff received approximately $4,900,000 [Canadian dollars] from the sale of a parcel of property and approximately $2,900,000 in life insurance proceeds [Ex. C, p. 14, 24]. The plaintiff and Mr. Tsai were introduced approximately six months later, and then married in April, 1997. On or about October 23, 2003, after approximately six and one-half years of marriage, the plaintiff commenced suit for divorce from Mr. Tsai. During the course of the matrimonial action, the plaintiff was awarded pendente lite relief of $28,000 per month [Ex. BB]. In November, 2005, the plaintiff and Mr. Tsai entered into a stipulation of settlement whereby the plaintiff received a tax-free distributive award of $5,000,000 and the additional sum of $15,000 per month for a period of sixty months [Ex. BB]. The plaintiff and Mr. Tsai each retained as their separate property all cash and accounts that were in their sole names, and each waived any right in the accounts of the other and each renounced and released any interest in the estate of the other [Ex. BB].

Against that factual backdrop, the plaintiff now seeks to recover additional millions based, in part, upon supposed promises made by Mr. Tsai to the plaintiff. The plaintiff seeks such

1

damages based, in part, upon the alleged negligence of the defendants in failing to effectuate the supposed oral promises of Mr. Tsai [Ex. A, ¶¶ 8-9]. According to the plaintiff, such promises were made to her by Mr. Tsai because she was concerned for her financial well-being, notwithstanding the fact that she received some $7,800,000 dollars [Canadian] as a consequence of her second husband's passing. To the extent the plaintiff's concerns before the marriage carried over to the marriage, those concerns should have been eased by her allowance of $10,000 per month during the first year and then $15,000 per month thereafter [Ex. C, p. 116], as well as credit cards whose bills she did not pay [Ex. C, p. 120]. In addition, whenever the plaintiff needed more money she was given it. The plaintiff also earned in excess of $100,000 per year on income from investments. Thus, whatever financial concerns the plaintiff had prior to marrying Mr. Tsai, which were misplaced in any event given the amount of money the plaintiff received when her second husband passed away, those concerns certainly should have been alleviated by the money she was given by Mr. Tsai on a monthly basis.

The plaintiff specifically alleges that Mr. Tsai promised her that she would be made the beneficiary of an $8,000,000 life insurance policy that would not be conditioned upon their being married and/or living together at the time of his death, and promised her that he would deed to her outright certain residential property in Palm Beach and Manhattan [Ex. A, ¶¶ 8-9]. By plaintiff's own admission, however, when this latter promise was made there was no specific Manhattan property even owned by Mr. Tsai that she believed had been promised to her, and she likewise could not even identify any specific parcel of property in Palm Beach [Ex. C, p. 53, 56]. These same facts also form the basis of plaintiff's cause of action sounding in interference with prospective advantage, with it being alleged that the plaintiff and Mr. Tsai would have entered into agreements that reflected Mr. Tsai's alleged oral promises, but for the interference of the defendants. The plaintiff also seeks damages based upon the defendants' alleged breach of fiduciary duty, based upon Ms. Billman's service as manager of Avian LLC, a company formed by Mr. Tsai to essentially provide financial assistance to his friend, Sharon Bush, who was in the midst of a bitter divorce and needed money to purchase her marital residence [Ex. T, U]. Ms. Billman, in her capacity as manager of Avian, made payments to Ms. Bush when directed to do so by Mr. Tsai, which payments Ms. Bush guaranteed to

2

repay [Ex. V, X]. Mr. Tsai denied to Ms. Billman any romantic involvement between he and Ms. Bush, and the plaintiff herself has testified that she did not believe the relationship to have been romantic. Avian also purchased an apartment in Manhattan, primarily for use by Ms. Bush when she came to New York City, which remained titled in Avian as reflected in the stipulation of settlement that was entered into in the matrimonial action [Ex. Y]. All issues surrounding Avian were addressed in the context of the matrimonial action, and to the extent the plaintiff claimed that Mr. Tsai dissipated marital assets to provide financial assistance to Ms. Bush or to purchase an apartment, the plaintiff voluntarily agreed to settle all those claims for some $5,900,000 rather than proceed to trial [Ex. BB]. Moreover, as stated by Mr. Tsai, he would have provided this assistance to Ms. Bush regardless of whether Ms. Billman was the manager of Avian [Tsai Aff., ¶ 6].

As will be established in this motion, it is respectfully submitted that the defendants were not negligent during their representation of the plaintiff and Mr. Tsai in connection with their estate planning matters. Even assuming for the sake of argument they were, the plaintiff is unable to show that she would have more money or more assets but for that alleged negligence. The defendants cannot be held liable for failing to effectuate the supposed oral promises of Mr. Tsai, which promises themselves could not even have been enforced against Mr. Tsai under the circumstances. While there is no dispute that the concept of Mr. Tsai deeding property to the plaintiff was being considered as part of Mr. Tsai's entire estate plan, the evidence is overwhelming that if that were to ever occur it would only be after the plaintiff became a United States citizen. That did not occur until February, 2003, approximately six years into the marriage and just ten months before the plaintiff filed for divorce. In addition to being insufficient to support plaintiff's negligence claim, the same allegations cannot support plaintiff's cause of action sounding in interference with prospective advantage.

The plaintiff's beneficiary status as it pertained to Mr. Tsai's life insurance policy did change during the defendants' representation, such that it became conditioned upon the plaintiff and Mr. Tsai being married and living together at the time of his death [Ex. P]. However, that change was made because of an anomaly in the various estate planning documents. Moreover, the language implementing that change was first drafted in December, 2001, and was included in multiple

revisions to the estate planning documents before finally being implemented in September, 2002. The plaintiff was provided with copies of all estate planning documents and was aware of the fact that a change in the estate plan had been made that required her to be married to and living with Mr. Tsai at the time of his death in order for her to receive the proceeds of the subject life insurance policy [Ex. L, M, N]. In addition, between the first draft in December, 2001 and the signing of the documents in September, 2002, there was no marital discord between the plaintiff and Mr. Tsai and Mr. Tsai had not as of yet formed Avian.

Although the plaintiff claims that she generally did not read or understand the estate planning documents she was given and that she signed [Ex. C, p. 78], her educational background and business achievements belie any claim that she did not understand what she was provided with and signed. Moreover, the plaintiff has admitted that whenever she did not understand a document, she would ask for and receive an explanation from Ms. Billman [Ex. C, p. 80-81]. Beyond that, because Mr. Tsai is still living the plaintiff's claim is speculative. It was also the plaintiff who instituted a divorce action against Mr. Tsai in 2003 [Ex. BB], thereby voluntarily removing the one condition upon which her beneficiary status was conditioned. The subject policy, into which Mr. Tsai has never made a single premium payment, has minimal cash value and is set to terminate on its own in a matter of months [Ex. E, F]. Thus, even if nothing had changed, it is clear that the plaintiff's claim is premature given that Mr. Tsai is still alive and highly speculative in light of the impending expiration of the policy.

As for plaintiff's breach of fiduciary duty claim with respect to Avian, the evidence is clear that Ms. Billman had the corporation formed and served as manager at the request of Mr. Tsai and that the purpose of Avian was to provide financial assistance to a friend in need [Ex. T, U, V, W, X]. There is no dispute that Mr. Tsai had tremendous wealth before his marriage to the plaintiff [Ex. N], and the fact that he chose to assist a friend does not result in the plaintiff having a cause of action against the defendants merely because Ms. Billman executed Mr. Tsai's discretion to make the payments to Ms. Bush and did not apprise the plaintiff of these payments. Again, to the extent plaintiff alleged Mr. Tsai dissipated marital assets in providing this financial assistance to Ms. Bush,

4

this claim was addressed and resolved in the matrimonial action. As a result, the plaintiff cannot establish she sustained any actual damages by virtue of the alleged breach of fiduciary duty.

Lastly, under these facts, the plaintiff's claim for punitive damages of $10,000,000 is not warranted. The plaintiff was apprised of the amendment to Mr. Tsai's estate plan that conditioned her beneficiary status upon her and Mr. Tsai being married and living together at the time of his death, and at the time the change was first introduced up until it was effectuated there was no marital discord between the plaintiff and Mr. Tsai. The fact that the defendants did not advise the plaintiff to seek separate counsel in connection with this change does not, under the circumstances, rise to the level of conduct needed to support a punitive damages claim.

The fact that Ms. Billman formed Avian and served as manager at the request of Mr. Tsai had no connection to the defendants' representation of the plaintiff and Mr. Tsai in connection with their estate planning. The fact that Ms. Billman honored Mr. Tsai's request that the plaintiff not be apprised of Avian does not constitute a breach of fiduciary duty, nor does it support a claim for punitive damages. Mr. Tsai was a very successful and wealthy businessman before he ever met the plaintiff, with significant separate property and assets, and his desire to spend some of those assets to assist a friend, and to so under a corporation that he asked Ms. Billman to manage, was perfectly within his rights and, in any case, does not constitute the type of outrageous conduct required to sustain a claim for punitive damages.

### STATEMENT OF FACTS

In the interests of brevity, the attention of the Court is respectfully directed to the affidavit of Peter D. Rigelhaupt sworn to May 30, 2007 ["Rigelhaupt Aff."], the affidavit of Martha Billman sworn to May 30, 2007 ["Billman Aff."], together with the Statement Pursuant to Local Rule 56.1 and all exhibits annexed to the notice of motion dated May 30, 2007, for a summary of the facts and legal arguments supporting the motion for summary judgment.

## POINT I

## THE PLAINTIFF CANNOT ESTABLISH THOSE ELEMENTS
## NECESSARY TO SUSTAIN HER CLAIM SOUNDING IN LEGAL MALPRACTICE

An attorney is liable for malpractice if it can be proven that his or her conduct fell below the ordinary and reasonable skill and knowledge commonly possessed by a member of the profession, that the attorney's negligence was a proximate cause of the loss sustained, and proof of actual damages. Brooks v. Lewin, 21 A.D.3d 731, 800 N.Y.S.2d 695 (1st Dept. 2005); Keeley v. Tracey, 301 A.D.2d 501, 753 N.Y.S.2d 141 (2d Dept. 2003). Moreover, damages must be actual and ascertainable, not speculative. Brooks v. Lewin, supra; Luniewski v. Zeitlin, 188 A.D.2d 642, 591 N.Y.S.2d 524 (2d Dept. 1992); Gazzola Building Corp. v. Shapiro, 181 A.D.2d 718, 580 N.Y.S.2d 477 (2d Dept. 1992). "The failure to establish proximate cause mandates the dismissal of a legal malpractice action, regardless of the attorney's negligence." Brooks v. Lewin, 21 A.D.3d 731, 734, 800 N.Y.S.2d 695, 697 1st Dept. 2005). In Sloane v. Reich, 1994 WL 88008 (S.D.N.Y. 1994), it was stated that this causation requirement "seeks to insure a tight causal relationship between the claimed injuries and the alleged malpractice, and demands a nexus between loss and injury."

Based upon all of the available evidence, the plaintiff simply cannot establish any of the necessary elements to sustain her negligence cause of action. As stated in the complaint, this cause of action is predicated upon two distinct issues. First, the plaintiff is alleging that the defendants were negligent in failing to effectuate the alleged oral promises of Mr. Tsai-first made prior to their marriage in 1997 and more than four years before the defendants began representing Mr. Tsai and the plaintiff in connection with their estate plans-that he would deed to the plaintiff certain real property located in New York and Palm Beach [Ex. A, ¶ 9]. This property is not identified in any fashion in the complaint and the plaintiff does not state when these supposed transfers were to have taken place. According to the plaintiff, this promise that she would be deeded outright certain property, undoubtedly lucrative to the extent plaintiff can even identify it, was made because she was concerned for her financial well-being after being widowed from her second husband [Ex. A, ¶¶ 8-9]

6

However, it is respectfully submitted that plaintiff's concerns for her financial well-being are belied by testimony at her deposition in this matter, where she conceded that following the death of her second husband Vincent Paul in February, 1996, some six months before she met Mr. Tsai, she received some $4,900,000 [Canadian dollars] from the sale of a piece of property [Ex. C, p.14, l.15-16]. The plaintiff further testified that she received some $2,900,000 in life insurance proceeds upon the death of Mr. Paul [Ex. C, p.24, l.23-24].

In addition to the foregoing testimony, it is clear that upon her marriage to Mr. Tsai the plaintiff's financial concerns had to have been somewhat assuaged in light of the significant sums of money she received from Mr. Tsai. In this regard, the plaintiff testified that during her marriage to Mr. Tsai she received money each month, beginning at $10,000 per month and then increasing to $15,000 per month after one year. [Ex. C, p.116, l.8-11].

Regardless of whether the plaintiff's concerns for her financial well-being were justified, it seems clear that the alleged promise made by Mr. Tsai before his marriage to the plaintiff that he would deed to her outright certain properties in Palm Beach and Manhattan, did not even concern a specific piece of property. In this regard, the plaintiff could not identify any specific Palm Beach properties in existence that she believed would be deeded to her [Ex. C, p. 53, l.19-24], and admitted that there was no New York property in existence at the time [Ex. C, p. 56, l. 4-8].

It is submitted that based upon the plaintiff's very testimony, she cannot even identify any specific piece of property that Mr. Tsai owned prior to their marriage that he purportedly promised to deed to her outright upon their becoming married. As a result, there was no specific promise that the plaintiff could have enforced against Mr. Tsai. Indeed, pursuant to New York State General Obligations Law ["GBL"] § 5-701(3), any promise made in consideration of marriage is void unless in writing and subscribed to by the party to be charged. Likewise, pursuant to GBL § 5-701(1), any promise or agreement that by its terms is not to be performed within one year from the making thereof is void unless in writing. Having no promise that could have been enforced against

Mr. Tsai, the plaintiff cannot now prevail on the claim that the defendants were negligent in failing to make those promises come true. The defendants were without power to force Mr. Tsai to effectuate such promises, and certainly were not negligent merely by virtue of the fact that Mr. Tsai did not deed outright certain pieces of property to the plaintiff. In his affidavit submitted with this motion, Mr. Tsai stated that he decided not to make these transfers, notwithstanding the earlier discussions about possibly doing so [Tsai Aff., ¶ 3]. As detailed at length in the affidavit of Ms. Billman, while there were general discussions about property being deeded to the plaintiff, these discussions were only part of the much larger estate planning picture. In contrast to what the plaintiff claims to have been promised by Mr. Tsai before their marriage, the discussions that Ms. Billman had on this point focused without fail on what might happen, and then only after the plaintiff achieved her citizenship status. Again, however, at no time was Ms. Billman ever directed to actually transfer outright any real property to the plaintiff that Mr. Tsai owned.

The second prong of plaintiff's first cause of action for malpractice is predicated upon the claim that the defendants were negligent with respect to an eight million dollar life insurance policy that the plaintiff was named the beneficiary of [Ex. A, ¶¶ 9-12, 20, 33-34]. For a number of reasons, this claim must fall.

First, the claim is most certainly premature since Mr. Tsai is still alive, and there is no guarantee that he will predecease the plaintiff. Second, as established, the policy of insurance that the plaintiff refers to was purchased in 1988, with a one-time premium payment from Mr. Tsai's then employer Primerica in the amount of $1,656,860. Critically, the policy is subject to a collateral assignment such that presently United States Life Insurance would be entitled to receive back that initial payment of $1,656,860 before the beneficiary received the death benefit. However, because no premium payments have ever been made by Mr. Tsai since the purchase of the policy in 1988, the cash value of the policy is so low that the policy is set to terminate on its own on terms or about December 9, 2007. Thus, even if no changes were ever made to the plaintiff's status as beneficiary, it is expected that by the end of this year the policy will expire. Under these facts, the plaintiff simply cannot demonstrate, as she must, that she would have been the recipient of an $8,000,000 death

benefit upon the passing of Mr. Tsai.

Since plaintiff's claims with respect to the life insurance policy are contingent upon Mr. Tsai predeceasing her, they are entirely speculative. See, Phillips-Smith Specialty Retail Group v. Parker, Chapin, et al, 265 A.D.2d 208, 696 N.Y.S.2d 150 (1st Dept. 1999)("[c]ontentions underlying a claim for legal malpractice which are couched in terms of gross speculations on future events and point to the speculative nature of plaintiff's claim, are insufficient as a matter of law to establish that defendant's negligence, if any, was the proximate cause of plaintiff's injuries.")

Here the situation is similar, since plaintiff's claim is predicated entirely upon the argument that Mr. Tsai will predecease her, and that he will do so before the policy is set to terminate on its own terms in December, 2007. These events are entirely speculative, and insufficient to maintain her legal malpractice cause of action.

Third, the evidence establishes that after the plaintiff and Mr. Tsai retained the defendants in December, 2001, Ms. Billman undertook a review of the estate plan that had been prepared by Paul Weiss, and recognized that certain changes needed to be made. One of these changes was designed to correct an anomaly in the Insurance Trust, which provided that while the termination of the marriage would cause the plaintiff to no longer be trustee, she would still retain her beneficial interest. As set forth by Ms. Billman, in her experience when a marriage ends any beneficial interest ends as well, and in fact under New York law when a person dies with a Will any beneficial interest of a divorced spouse automatically ends. See, New York Estates, Powers and Trusts Law § 5-1.4. Thus, Ms. Billman drafted an amendment and restatement of the Revocable Trust and a new Insurance Trust.

Ms. Billman met with the plaintiff and Mr. Tsai on December 10, 2001, and as a result drafted summaries of proposed revisions to the Revocable Trust and Insurance Trust. These summaries were sent to the plaintiff and Mr. Tsai on December 19, 2001, long before Ms. Billman knew of any marital discord between the plaintiff and Mr. Tsai. In these summaries, it was stated in a

9

number of places that the assets of the Insurance Trust would be payable to the plaintiff, after the payment of three $1,000,000 legacies to the plaintiff's daughter and two of Mr. Tsai's children, provided that the plaintiff survive Mr. Tsai and they were married and living together at the time.

To the extent the plaintiff claims she did not read or understand any document that is simply not a valid excuse. In the case of Pimpinello v. Swift & Co., Inc., 253 N.Y. 159, 170 N.E. 530 (1930), it was held that "[o]rdinarily, the signor of a deed or other instrument, expressive of a jural act, is conclusively bound thereby. That his mind never gave assent to the terms expressed is not material." Id at 531. Since Pimpinello, courts have consistently reaffirmed that holding, including in the context of legal malpractice actions. See Beattie v. Brown & Wood, 243 A.D.2d 295, 663 N.Y.S.2d 199 (1st Dept. 1997)(plaintiff "responsible for his signature and bound to read and know what he signed"). See, also, Sindelar v. Hawley, 290 A.D.2d 661, 736 N.Y.S.2d 175 (3d Dept. 2002); Freda v. McNamara, 254 A.D.2d 251, 678 N.Y.S.2d 135 (2d Dept. 1998); Sofio v. Hughes, 162 A.D.2d 518, 556 N.Y.S.2d 717 (2d Dept. 1990); Columbus Trust Co. v. Campolo, 110 A.D.2d 616, 487 N.Y.S.2d 105 (2d Dept. 1984), aff'd 66 N.Y.2d 701, 496 N.Y.S.2d 425 (1985); Union National Bank v. Schrum, 87 A.D.2d 682, 448 N.Y.S.2d 813 (3d Dept. 1982); Norstar Bank of Upstate New York v. Office Control Systems, 165 A.D.2d 265 (3d Dept. 1991).

Moreover, Mr. Tsai has stated that upon being apprised of the fact that the plaintiff would be the beneficiary even in the event they were divorced, he instructed Ms. Billman to make whatever changes were needed so that the plaintiff would no longer be the beneficiary of his life insurance policy should they get divorced [Tsai Aff., ¶ 4].

In light of these facts, it is submitted that the plaintiff is unable to establish that the y defendants were negligent during their representation of the plaintiff, and as such dismissal of plaintiff's first cause of action is warranted.

10

## POINT II

## THE PLAINTIFF IS UNABLE TO SUSTAIN HER SECOND CAUSE OF ACTION SOUNDING IN BREACH OF FIDUCIARY DUTY

The plaintiff's second cause of action sounding in breach of fiduciary duty is predicated upon a number of distinct allegations, none of which can survive summary judgment.

First, the plaintiff claims that the defendants breached their fiduciary duty to the plaintiff by failing to advise her to seek independent counsel in connection with certain documents prepared by the defendants and signed by the plaintiff [Ex. A, ¶ 45-46]. This claim essentially boils down to an alleged conflict of interest on the part of the defendants [Ex. A, ¶ 47].

However, it is well settled that a conflict of interest does not constitute an independent basis for liability. Swift v. Choe, 242 A.D.2d 188, 192, 674 N.Y.S.2d 17 (1st Dept. 1998); Weintraub v. Phillips, Nizer, Benjamin, Krim & Ballon, 172 A.D.2d 254, 568 N.Y.S.2d 84 (1st Dept. 1991). In Mills v. Pappas, 174 A.D.2d 780, 570 N.Y.S.2d 726 (3d Dept. 1991, the court rejected plaintiff-executrix' claim that her former attorney's representation in a proceeding against her in the same forum, arising out of the same estate, constituted malpractice. In doing so, the court stated that "any such conflict is at most a violation of defendants' ethical responsibilities, an insufficient basis for imposing liability in favor of a former client." 570 N.Y.S.2d at 728. In Brainard v. Brown, 91 A.D.2d 287, 458 N.Y.S.2d 735 (3d Dept. 1983), the Appellate Division similarly held that, "the assertion that defendant, by dint of his representation simultaneously of both plaintiff and the excavating concern, breached the duty of loyalty imposed by Canon 5 of the Code of Professional Responsibility and that this gives rise to a cause of action for breach of contract, is not well founded. A purported violation of a disciplinary rule does no, in itself, generate a cause of action (Cronin v. Scott, 78 A.D.2d 745, 432 N.Y.S.2d 656)." See, also, Brown v. Samalin & Bock, P.C., 155 A.D.2d 407, 547 N.Y.S.2d 80 (2d Dept. 1989), holding that "even if the procurement of the release constituted a violation of the Code of Professional Responsibility, as plaintiff claims, it did not, in itself, generate a cause of action...."

11

This decisional law is consistent with the expressed intent of the drafters of the Code of Professional Responsibility as adopted in New York. The Preliminary Statement to the Code of Professional Responsibility clearly states that "[t]he Code makes no attempt to prescribe disciplinary procedures or penalties for violation of a Disciplinary Rule, nor does it undertake to define standards for civil liability of lawyers for professional conduct." See, Simon, R., Simon's New York Code of Professional Responsibility Annotated, 2000 Ed., p. 6 (West 2005).

In addition, it is clear that plaintiff's cause of action for breach of fiduciary duty is, in significant part, based upon the same claim of legal malpractice set forth in her first cause of action, specifically that the defendants deprived plaintiff of assets "promised to plaintiff by Mr. Tsai, including the life insurance and Florida and New York properties" [Ex. A, ¶ 48].Thus, to the extent the two causes of action of action are based upon the same allegations, the breach of fiduciary claim must fall as result of it being duplicative of the malpractice claim. See, AmBase v. Davis, Polk & Wardell, 30 A.D.3d 171, 816 N.Y.S.2d 438 (1st Dept. 2006); Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, 10 A.D.3d 267, 780 N.Y.S.2d 593 (1st Dept. 2004)(breach of fiduciary claim duplicative of malpractice claim dismissed); William Kaufman Organization, Ltd. v. Graham & James, LLP, 269 A.D.2d 171, 703 N.Y.S.2d 439 (1st Dept. 2000); Mecca v. Shang, 258 A.D.2d 569, 685 N.Y.S.2d 458 (2d Dept. 1999).

Although plaintiff in her second cause of action asserts that the conduct of the defendants was a "substantial factor" in her damages, it is submitted that the substantial factor test in a breach of fiduciary cause of action is not the proper analysis. The Second Circuit in American Federal Group, Ltd. v. Rothenberg, 136 F. 3d 897 (2d Cir. 1998) determined that the substantial factor test should only be applied when the claim is based on the unjust enrichment of the fiduciary. Yet, when damages are sought, as is the case here, the proximate cause standard applies. See, also, LNC Investments, Inc. v. First Fidelity Bank, 2000 WL 375236 (S.D.N.Y. 2000)("where damages are sought for breach of fiduciary duty under New York law, the plaintiff must demonstrate that the defendant's conduct proximately caused injury in order to establish liability")173 F.3d at 465; BNY

Capital Markets, Inc. v. Moltech Corporation, 2001 WL 262675 (S.D.N.Y. 2001) (granting summary judgment dismissing breach of fiduciary duty claim due to failure to establish damages proximately caused by the alleged breaches); Koppel v. 4987 Corp., 2001 WL 47000 (S.D.N.Y. 2001) (applying the proximate cause standard in a breach of fiduciary duty claim seeking damages); Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc., 10 A.D.3d 267, 780 N.Y.S.2d 593 (1st Dept. 2004)(trial court found to have erred in applying the "less rigorous 'substantial factor' causative standard") 10 A.D.3d 267, 271, 780 N.Y.S.2d 593,596.

Here, the plaintiff is unable to establish that the claimed breach of fiduciary duty proximately caused her damages. As already established, Ms. Billman was never requested at any time during the representation to transfer any of Mr. Tsai's residential property outright to the plaintiff, nor was she ever told of any express promise to do so on the part of Mr. Tsai. The concept of possibly doing so, after the plaintiff first obtained her citizenship, was discussed at various points in time but only as part of the larger estate plan picture. The fact that such discussions never resulted in Mr. Tsai voluntarily giving his property away to the plaintiff does not give rise to a breach of fiduciary duty claim against the attorneys who presumably would have effectuated any such desire on the part of Mr. Tsai, had it truly existed.

As far as the life insurance is concerned, as already noted those allegations are duplicative of the allegations in the plaintiff's malpractice cause of action, and for that reason must be dismissed. In addition, the plaintiff is unable to establish any damages flowing from her allegations over the life insurance, since (i) Mr. Tsai is still living, (ii) the plaintiff could predecease Mr. Tsai, (iii) the policy itself is projected to terminate on its own before the end of 2007; and (iv) the plaintiff voluntarily commenced the divorce action. Since the plaintiff is unable to establish any actual damages as a result of the alleged breach of fiduciary duty, which she must, she cannot prevail on this cause of action. See, Flutie Bros. LLC v. Hayes, 2006 WL 1379594 (S.D.N.Y. 2006); Gupta v. Rubin, 2001 WL 59237 (S.D.N.Y. 2001).

13

With respect to plaintiff's claims regarding Avian, it is likewise submitted that these allegations do not form the basis of a viable breach of fiduciary claim. There was no breach of fiduciary duty to the plaintiff in Ms. Billman forming Avian at the request of Mr. Tsai, or in her service as manager, while at the same time representing the plaintiff and Mr. Tsai in connection with their estate planning matters. Mr. Tsai, a wealthy businessman long before his marriage to the plaintiff, who possessed significant assets separate and apart from marital assets, was clearly free to provide financial assistance to Ms. Bush, just as he was free to assist the plaintiff's daughter from her prior marriage in buying a car and an apartment. Mr. Tsai denied to Ms. Billman any romantic involvement with Ms. Bush, and the plaintiff herself has testified that she did not believe it to be the case. The fact that Mr. Tsai did not want the plaintiff to know about these transactions, and that Ms. Billman honored that request, does not create a breach of fiduciary duty. Moreover, as already noted, the plaintiff raised these claims in the context of her matrimonial action and, in choosing to voluntarily settle all of her claims for some $6,000,000, she cannot now be heard to claim on these facts that Ms. Billman breached any fiduciary duty to her.

14

**POINT III**

**THE PLAINTIFF IS UNABLE TO SATISFY THE ELEMENTS OF HER THIRD CAUSE OF ACTION FOR INTERFERENCE WITH PROSPECTIVE ADVANTAGE**

The plaintiff's third and final cause of action sounds in interference with prospective economic advantage. As alleged in the complaint, this cause of action is predicated upon the claim that the defendants knew of the "proposed promises and representations" between the plaintiff and Mr. Tsai [Ex. A, ¶59], and that "[u]pon information and belief, had it not been for defendants' interference, plaintiff and Mr. Tsai would have effectuated an agreement that properly reflected their intent" [Ex. A, ¶61]. For the reasons set forth below, on both the facts and the law it is submitted that dismissal of plaintiff's third cause of action is warranted.

As conceded by the plaintiff in her complaint, it was not until December, 2001 that the defendants first undertook the representation of the plaintiff and Mr. Tsai [Ex. A, ¶19]. This was more than four and one-half years after the plaintiff and Mr. Tsai were married. Yet, according to the plaintiff, it was prior to the marriage that Mr. Tsai first "promised plaintiff" that she would be made the "beneficiary of an eight million dollar life insurance policy that would not be conditioned upon them being married and/or living together at the time of Gerald Tsai Jr.'s death, and that he would deed to her certain real property" in Manhattan and Palm Beach [Ex. A, ¶9]. The complaint is silent as to when such promises were to be effectuated, but by plaintiff's own testimony the Manhattan property that Mr. Tsai promised to give her was not even in existence and she could not identify any specific piece of Palm Beach property.

There is, of course, also not a single document in existence which supports plaintiff's contention that Mr. Tsai made a promise that he would transfer lucrative properties in Manhattan and Palm Beach to the plaintiff simply upon her marrying him, nor is there any documentation post-marriage which reflects that Mr. Tsai made such promises to the plaintiff. There is likewise not a single document in existence which reflects that Ms. Billman was asked to transfer title to Mr. Tsai's property in Manhattan or Palm Beach to the plaintiff. Rather, as described by Ms. Billman, there

15

were simply general discussions about gifts being made to the plaintiff upon her becoming a United States citizen, which did not occur in 2003, but these general discussions never resulted in any request by Mr. Tsai that his properties be transferred outright to the plaintiff. Contrary to the contention of the plaintiff, there was no "interference" on the part of the defendants, again retained some four and one-half years after Mr. Tsai supposedly first made these promises to the plaintiff, which resulted in Mr. Tsai not deeding any of his real estate to the plaintiff.

In addition to failing from a factual standpoint, the plaintiff's third cause of action fails from a legal standpoint as well. First, the claim is entirely duplicative of the plaintiff's cause of action for malpractice, and for that reason must be dismissed. See, Daniels v. Lebit, 299 A.D.2d 310, 749 N.Y.S.2d 149 (2d Dept. 2002); Best v. Queller & Fisher, 278 A.D.2d 441, 718 N.Y.S.2d 397 (2d Dept. 2000), cert. den. 122 S. Ct. 812 (2002).

Second, the plaintiff is unable to satisfy the elements of a cause of action for interference with prospective advantage, specifically that the defendants (i) must have known of the proposed contract between the plaintiff and the other party; (ii) must have intentionally interfered with the proposed contract; (iii) that the proposed contract would have been entered into but for the defendants' interference; (iv) the defendants' interference was done by wrongful means; and (v) the plaintiff suffered damages as a result. See, New York Pattern Jury Instructions 3:57.

In various instances, the elements have been stated somewhat differently. For instance, in Henneberry v. Sumitomo Corporation of America, 2005 WL 991772 (S.D.N.Y. 2005), the court (Leisure, J.) stated that:

> [t]o establish a claim for tortious interference with prospective business advantage, plaintiff must prove that: (1) there was a business relationship with a third-party; defendants "knew of that relationship and intentionally interfered with it"; (3) defendants either acted "solely out of malice" or used wrongful means; and (4) defendants' "interference caused injury to the relationship" with the third-party.

2005 WL 991772*22, citing Carvel Corp. v. Noonan, 350 F.3d 6, 17 (2d Cir. 2002).

16

In Carvel Corporation v. Noonan, 3 N.Y.3d 182, 785 N.Y.S.2d 359 (2004), the New York Court of Appeals, upon a certified question, recognized a distinction between a claim of interference with an existing, enforceable contract and interference with merely prospective contract rights, and stated that in the latter case the plaintiff "must show more culpable conduct on the part of the defendant." 3 N.Y.3d 182, 190, 785 N.Y.S.2d 359, 362, citing NBT Bancorp Inc. et al. v Fleet/Norstar Financial Group, Inc., 87 N.Y.2d 614, 641 N.Y.S.2d 581 (1996). In describing that standard, the Court of Appeals stated that conduct that is not criminal or tortious will generally be "lawful" and thus insufficiently "culpable" to create liability for interference with prospective contracts or other nonbinding economic relations. 3 N.Y.3d 182, 190, 785 N.Y.S.2d 359, 362

At another point, the Court of Appeals in Carvel Corporation stated that the defendant will not be liable "so long as the means employed are not wrongful." 3 N.Y.3d 182, 191, 785 N.Y.S.2d 359, 363, citing Guard-Life Corporation v. S. Parker Hardware Manufacturing Corp., 50 N.Y.2d 183, 428 N.Y.S.2d 628 (1980).

In Guard-Life, supra, the Court of Appeals, relying upon the Restatement (Second) of Torts §768, defined "wrongful means" to include "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with the contract." 50 N.Y.2d 183, 191, 428 N.Y.S.2d 628, 632.

Here, the plaintiff is unable to satisfy a single element of this cause of action. The alleged promise of Mr. Tsai was first made prior to his marriage to the plaintiff in 1997 and some four and one-half years before the defendants began representing the plaintiff and Mr. Tsai. During that more than four and one-half year time span, there is not a shred of evidence which supports plaintiff's claim of such an oral promise on the part of Mr. Tsai, and certainly Ms. Billman was never made aware of any such express promise on the part of Mr. Tsai nor was she ever instructed to prepare documents necessary to effectuate any outright transfer of Mr. Tsai's property to the plaintiff.

17

The general discussions that were had, in the context of the much larger overall estate plan picture about Mr. Tsai possibly transferring property to the plaintiff upon her becoming a citizen, does not equate to the defendants having engaged in the type of criminal or tortuous conduct needed to support such a cause of action merely because Mr. Tsai never gave his property away to the plaintiff.

In Piccoli A/S v. Calvin Klein Jeanswear Co., 19 F. Supp. 2d 157 (S.D.N.Y. 1998), it was held that "under New York law, in order for a party to make out a claim for tortious interference with prospective economic advantage, the defendant must interfere with the business relationship directly; that is, the defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with the plaintiff." 19 F.Supp.2d 157, 167, citing Fonar Corp. v. Magnetic Resonance Plus, Inc., 957 F.Supp. 477, 482 (S.D.N.Y. 1997).  New York courts also hold that the plaintiff must show that an actual contract would have been entered into but for the defendant's malicious, fraudulent or deceitful acts. See, Mandelblatt v. Devon Stores, Inc., 132 A.D.2d 162, 521 N.Y.S.2d 672 (1st Dept. 1987). This standard has been set forth in a number of District Court cases as well. See, Zeigan v. Blue Cross and Blue Shield of Greater New York, 607 F. Supp. 1434 (S.D.N.Y. 1985).

Here, the plaintiff simply cannot meet any of the requirements of this cause of action. There was no proposed contract between the plaintiff and Mr. Tsai that the defendants were aware of. As a result, there could not have been any intentional interference by the defendants. However, even if a proposed contract could be divined from the facts presented, there was no intentional interference by the defendants with it, and there is absolutely no proof that such a proposed contract would have been entered but for the defendants' interference. The alleged oral promises of Mr. Tsai also could never have been enforced under New York General Obligations Law. Finally, the conduct on the part of the defendants with respect to this cause of action does not come remotely close to the level of almost criminal conduct needed to support this claim. This was a marriage, not a business relationship, and the plaintiff herself testified she would have married Mr. Tsai irrespective of whether these supposed promises were made. As a result, the defendants are entitled to summary judgment dismissing the third cause of action.

18

**POINT IV**

**THE PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES SHOULD BE DISMISSED**

It is well settled that for punitive damages to be awarded, the defendant's conduct must be so outrageous as to evince a high degree of moral turpitude or such wanton dishonesty as to imply a criminal indifference to civil obligations. Walker v. Sheldon, 10 N.Y.2d 401, 223 N.Y.S.2d 488 (1961) (conduct must be morally culpable or actuated by evil and reprehensible motives); Zarin v. Reid & Priest, 184 A.D.2d 385, 585 N.Y.S.2d 379 (1st Dept. 1992) (conduct must be so outrageous as to evince a high degree of moral turpitude or such wanton dishonesty as to imply a criminal indifference to civil obligations). "Punitive damages are available for the purpose of vindicating a public right only where the actions of the alleged tort-feasor constitute gross recklessness or intentional, wanton or malicious conduct aimed at the public generally or are activated by evil or reprehensible motives." Spinosa v. Weinstein, 168 A.D.2d 32, 42-43, 571 N.Y.S.2d 747 (2d Dept. 1991).

In order to recover punitive damages, a "very high threshold of moral culpability must be satisfied." Giblin v. Murphy, 73 N.Y.2d 769, 772, 536 N.Y.S.2d 54 (1988). That requisite degree of culpability has been variously described: New York University v. Continental Ins. Co., 87 N.Y.2d 308, 639 N.Y.S.2d 283 (1995) (gross and morally reprehensible); Giblin v. Murphy, 73 N.Y.2d 769, 536 N.Y.S.2d 54 (1988) (wilful or wanton negligence or a wanton or reckless disregard or grossly negligent and reckless); Guardian Mortgage Acceptance Corporation v. Bankers Trust, 259 A.D.2d 358, 687 N.Y.S.2d 56 (1st Dept. 1999) (an outrageous public wrong); Harrell v. Champlain Enters., 222 A.D.2d 876 ,634 N.Y.S.2d 880 (3d Dept. 1995) (so reckless or wantonly negligent as to be the equivalent of a conscious disregard of the rights of others); Green v. Leibowitz, 118 A.D.2d 756, 758, 500 N.Y.S.2d 146 (2d Dept. 1986) (an abuse of professional status by repeated fraudulent misrepresentations); Le Mistral, Inc, v. Columbia Broadcasting System, 61 A.D.2d 491, 402 N.Y.S. 2d 815 (1st Dept. 1978) (wilful and intentional misdoing or a reckless indifference equivalent thereto); and Gill v. Montgomery Ward & Co., 284 A.D. 36, 129 N.Y.S.2d 288 (3d Dept. 1954) (willful, wanton and grossly reprehensible).

19

In Ebker v. Tan Jay International LTD., et al., 741 F.Supp. 448 (S.D.N.Y. 1990), this Court (Cooper, J.) held that in order to justify an award of punitive damages there must be a showing of actual injury which would justify an award of actual or compensatory damages. (citation omitted). Moreover, punitive damages generally are not recoverable where the alleged wrong was a private wrong as opposed to one aimed at the public generally. (citation omitted).

In the legal malpractice context, it has been stated that punitive damages are only awarded in "singularly rare cases" involving an improper state of mind or malice or cases involving wrongdoing to the public. Borthmer v. Schooler, Weinstein, Minsky & Lester, 266 A.D.2d 154, 698 N.Y.S.2d 486 (1st Dept. 1999); Zarin v. Reid & Priest, 184 A.D.2d 385, 585 N.Y.S.2d 379 (1st Dept. 1992). Under the circumstances presented in this case, it is submitted that there is no basis for an award of punitive damages and the claim should be dismissed.

## CONCLUSION

For all of the foregoing reasons, the defendants respectfully request that an Order be entered granting summary judgment dismissing the plaintiff's complaint and awarding such other, further and different relief as the Court may deem just and proper.

DATED:     Garden City, New York
           May 30, 2007

                            Yours, etc.,

                            L'ABBATE, BALKAN, COLAVITA
                            & CONTINI, LLP

                    By:     _Peter D. Rigelhaupt_____
                            Peter D. Rigelhaupt
                            Attorneys for Defendants

20